**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **ALEX STOKES** | * | **CIVIL ACTION NO. 06-571** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Alex Stokes, born April 21, 1971, filed applications for disability insurance benefits and supplemental security income payments on August 18, 2003, alleging disability since December 31, 2001, due to back and neck injuries.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Franklin Foundation dated February 28, 2002 to October 10, 2003**. In 2002, claimant was treated for back pain, headaches, and fatigue. (Tr. 119-20). He was prescribed Flexeril.

On April 7, 2003, claimant was seen for chemical burns to the hairline and scalp from perm solution. (Tr. 106). He was treated and discharged in good condition.

On April 21, 2003, claimant was treated for a back rash. (Tr. 104). The diagnosis was folliculitis. (Tr. 103).

On May 5, 2003, claimant complained of back pain after pulling a muscle in his back. (Tr. 100-01). He refused to answer all questions and left the emergency room.

On August 23, 2003, claimant reported being in an automobile accident on May 3, from which he sustained neck and left arm pain. (Tr. 97). He complained of pain and numbness in the left arm on August 23. The diagnosis was neck strain with left arm pain. (Tr. 98).

On October 10, 2003, claimant was seen for left leg burns from a gas can fire. (Tr. 92). His cooperation was poor. (Tr. 94). The diagnosis was first degree burns

to the left leg.

**(2) Records from Dr. Edison Ong dated February 24, 2002 to October 14, 2003**.[1] On January 9, 2003, claimant complained of back and neck pain with intermittent headaches. (Tr. 137). The assessment was cervical pain, low back pain, headaches, and chest pain all related to muscle spasm or ligament strain. (Tr. 135). He was prescribed Bextra, Tylenol, and Flexeril.

On January 20, 2003, claimant was seen for a burn to his left hand. (Tr. 134).

On May 6, 2003, claimant complained of back pain which had developed at work. (Tr. 129). The assessment was low back pain due to muscle strain.

On October 10, 2003, claimant was seen after a gas can caught fire and burned his leg. (Tr. 122). The assessment was a second degree burn, for which claimant underwent debridement. He was referred for physical therapy for hydrotherapy and whirlpool therapy.

**(3) Report from Dr. Tamela Charbonnet dated November 18, 2003**. Claimant was seen for oily skin and acne vulgaris. (Tr. 145). He was prescribed an oral medication for acne. From a skin point of view, Dr. Charbonnet found no work-related limitations on claimant's activities and no mental impairments.

---

[1]These records are largely illegible.

**(4) Consultative Examination by Dr. Harold Heitkamp dated November 20, 2003**. Claimant complained of pain in his head, neck, back, knee, and all over. (Tr. 146). He stated that he had difficulty sleeping at night, had pain in his head and back, and felt depressed. His medications included Naprosyn, Foltex (a vitamin), and Lortab. (Tr. 147).

On examination, claimant was 5 feet 11 ½ inches tall and weighed 216 pounds. His blood pressure was 128/67. His vision with glasses was 20/25 right and 20/40 left.

Examination of the head and neck revealed no spasm, but tenderness at C5-C6 on the left and C4-C5, C5-C6 on the right. He had trigger areas in both trapezius and brachial plexus. Range of motion of the cervical spine was slightly limited on forward and lateral flexion.

Claimant's shoulders had good strength and full range of motion. (Tr. 148). He had good strength in his biceps and triceps. Wrists were normal. He had good hand strength, grasping ability, and dexterity. He had normal sensation to pin prick.

On lumbar sacral examination, claimant could only squat 25 degrees (normal 95) with pain. He could get up on his toes and take a step, and get back on his heels. He had some slight spasm in the left paralumbar area, and was tender at L45-L5, L5-S1 on the right, with no radiation of pain. He had full range of motion.

In the seated position, claimant's biceps reflexes were 1+, and Patella and Achilles were 2+. Straight leg raising tests were negative. His hips had full range of motion. The left knee had no effusion and full range of motion, but some slight grating. His right knee was tender over the lateral aspect, with full range of motion, no grating, and no ligamentous weakness.

In the supine position, straight leg raising tests were negative. Claimant's ankles had good flexion. He had Pes Planus grade 3. He had normal prioceptive sense and normal sensation to pinprick.

Cervical spine x-rays were negative, except for complete straightening of the normal lordotic curve. Lumbar spine x-rays were normal, except for some straightening of the normal lordotic curve and some spondylosis of L5-S1.

Dr. Heitcamp's impression was lumbar sacral strain/sprain, rule out possible herniated disc in the cervical spine, "doubtful." (Tr. 149). Dr. Heitkamp noted that claimant had injured his back almost 10 years prior, and was re-injured in May when he struck his head on a steel plate on the bottom of a boat at work. He opined that claimant had some pathology in his cervical spine, probably some ligamental strain, and chronic lumbar sacral strain/sprain. He found that claimant should be limited to no medium to heavy lifting over 40 to 50 pounds and 15 pounds repetitively; bending, sitting, and walking to tolerance, and no repetitive squatting.

**(5) Residual Functional Capacity ("RFC") Assessment dated December 11, 2003**. The examiner determined that claimant could lift 50 pounds occasionally and 25 pounds frequently. (Tr. 151). He could stand/walk or sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He could frequently climb ramps and stairs, balance, stoop, and crouch; occasionally kneel and crawl, and never climb ladders, ropes, and scaffolds. (Tr. 152).

**(6) Records from Southeast Neuroscience dated August 11, 2005**. Claimant complained of neck and back pain, and numbness in both hands and upper extremities, particularly in the palmar aspect of the fourth and fifth digits of the left hand. (Tr. 158). On examination, he had no atrophy or fasciculations. His motor strength was 5/5 in the upper and lower extremities. His deep tendon reflexes were 2+ throughout. He had decreased sensation to pinprick and light touch in his left wrist compared to the right.

Sensory nerve conduction studies showed median nerve neuropathy at or near the left wrist consistent with a mild to moderate carpal tunnel syndrome. (Tr. 159).

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on May 4, 2005, claimant was unrepresented. (Tr. 164). The ALJ advised him of his right to an attorney, and asked if it was claimant's preference to proceed without one. (Tr. 164-65). In response, claimant testified that it was. (Tr. 165).

Claimant stated that he was 34 years old, and had obtained a GED. He had vocational training. (Tr. 165). He had past work experience as a seaman, fabrication helper, sugar mill helper, warehouseman, scaffolding supervisor, and tacker in a shipyard. (Tr. 169-73). He reported that he had last worked in May of 2003, when he hurt his back and got fired. (Tr. 166). He testified that he was looking for work. (Tr. 167).

Regarding complaints, claimant reported that he had injured his neck and head at work. (Tr. 168). He stated that he had headaches, for which he was taking Imitrex. (Tr. 175). He also had nerve twitches and bilateral arm pain. (Tr. 176).

Additionally, claimant had high cholesterol, for which he was taking Lipitor. He stated that his scalp and leg burns had healed. (Tr. 177). He also complained of depression, but was not receiving any treatment for it. (Tr. 188-89).

As to activities, claimant testified that he drove, visited with his grandmother, and took care of his two daughters. (Tr. 178). He stated that he could stand and walk for a couple of hours total in a day. (Tr. 179). He reported that he sat for most of the day.

**(8) Administrative Hearing Testimony of Thomas J. Meunier, Jr., Vocational Expert ("VE")**. Mr. Meunier classified claimant's past work as a packer as heavy and skilled, a boiler room helper in a sugar mill as light and semi-skilled, a

7

scaffold builder as medium and skilled, a warehouseman as medium and unskilled, a construction laborer or helper as very heavy and unskilled, a seaman as medium and semi-skilled, and an equipment operator or payload operator as medium and skilled. (Tr. 183). The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age and vocational background who could not lift over 40 to 50 pounds and 15 pounds repetitively; could sit three-quarters of the day or 6 hours in an 8-hour day; could stand and walk 2 hours in an 8-hour day; could kneel and crawl occasionally; could not squat repetitively; had no communicative, visual or environmental limitations; had some complaints of non-exertional pain in the lower back and headaches; interacted with his two children who lived with him; visited his grandmother; could drive, and could read and write. (Tr. 184-86). In response, the VE testified that claimant would not be able to return to his past relevant work, but could work as a cashier, of which there were 12,678 sedentary jobs in Louisiana and 615,359 nationally; unskilled dispatcher, of which there were 1,232 sedentary jobs statewide and 71,093 nationally; information clerk, of which there were 9,000 jobs statewide and 640,000 nationally; telemarketer, of which there were 2,897 jobs statewide and 279,503 nationally, and surveillance system monitor, of which there were 300 jobs statewide and 23,500 nationally. (Tr. 187-88).

**(9) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ failed to develop the record where claimant was unrepresented and records were missing; (2) the ALJ failed to present a proper hypothetical to the vocational expert by failing to mention claimant's upper body limitations, and (3) the ALJ should have sent claimant for a more recent consultative examination.

As to the first argument, claimant asserts that the ALJ should have more fully developed the record in light of his unrepresented status. (rec. doc. 8, pp. 4-8). Specifically, he argues that the ALJ failed to obtain more recent records as to his treatment and medication.

It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). When a claimant is not represented by counsel, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id*., citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). However, to merit reversal of the ALJ's decision, a claimant who does not validly waive his right to counsel must prove that he was thereby prejudiced. *Id*.; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997). *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). Prejudice can be established by

showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton,* 209 F.3d at 458.

Here, claimant argues that the ALJ should have obtained records from University Medical Center ("UMC") regarding his condition.[2] However, he does not show how these records would have led to a different decision. Thus, this argument lacks merit.

Next, claimant argues that the ALJ propounded a defective hypothetical to the vocational expert. (rec. doc. 8, pp. 8-9). Specifically, he asserts that the ALJ should have included the limitations concerning his non-exertional impairments resulting from his mild to moderate carpal tunnel syndrome. (Tr. 158-59). However, the record reflects that these records were produced after the hearing; thus, the ALJ could not have included this condition in the hypothetical to the vocational expert.

Claimant acknowledges that the ALJ could not have presented the evidence of carpal tunnel syndrome at the hearing since it was not available at that time. (rec. doc. 8, p. 8). However, he argues that this case should be remanded on that basis. When new evidence becomes available after the Secretary's decision and there is a

---

[2]The record reflects that the Social Security Administration attempted to obtain these records from UMC. (Tr. 84).

reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

To warrant remand, the new evidence must pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. *Leggett*, 67 F.3d at 567. The records from Dr. Aubert dated August 11, 2005 concern either a subsequently acquired disability – carpal tunnel syndrome – or the deterioration of a condition that was not previously disabling. (Tr. 158-59). Additionally, the claimant has not demonstrated that this evidence of mild to moderate carpal tunnel syndrome would change the outcome of the Commissioner's decision. As claimant has not met the requirements for remand, this argument lacks merit.

Returning to the hypothetical posed to the vocational expert, the record shows that claimant complained of numbness in his right arm on August 23, 2003. (Tr. 96). However, none of claimant's treating or consulting physicians indicated that this was disabling or would affect his ability to work. *See Vaughan v. Shalala*, 58 F.3d 129,

11

131 (5th Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled). As the ALJ's hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

In any event, the record reflects that the ALJ relied on the Medical-Vocational Guidelines to find that claimant was not disabled. (Tr. 17-18). As determined by the ALJ, claimant's characteristics correspond to the listing at § 201.28 of Appendix 2, which directs a finding of not disabled for a younger individual who has a high school education or more and has a background of skilled or semi-skilled work – skills not transferable. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.28. (Tr. 18). Thus, the ALJ's decision to rely on the grids is entitled to deference.

Finally, claimant asserts that the ALJ should have sent him for a more recent consultative examination. (rec. doc. 8, p. 10). Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). The decision to require such an examination is discretionary. *Id*. In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.

1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." A claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry' under 20 C.F.R. § 416.1444." *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989), quoting *Jones*, 829 F.2d at 526.

In this case, claimant has already had a consultative examination by Dr. Heitkamp. (Tr. 146-49). He has cited no evidence whatsoever to raise the requisite suspicion necessary to require the ALJ to order an additional consultative examination. Accordingly, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed November 29, 2006, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE